# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| ARTHUR VERNELL THOMPSON, | : | Case No. 2:23-cv-3930 |
| Plaintiff, | : | |
| vs. | : | Judge Edmund A. Sargus, Jr. |
| | : | Magistrate Judge Stephanie K. Bowman |
| MIKE DEWINE (GOVERNOR), *et al.*, | : | |
| Defendants. | : | |

## ORDER and
## REPORT AND RECOMMENDATION

Arthur Vernell Thompson, a prisoner in custody in Michigan, has filed a Complaint in this District Court for the Southern District of Ohio, alleging that state actors violated his constitutional rights by falsely labelling him a sex offender. He is proceeding in the case *in forma pauperis* and without the assistance of counsel.

The matter is currently before the Court for the required screening of the Complaint and to consider Thompson's response to the Court's previous Show Cause Order. For the reasons that follow, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DISMISS** the Complaint in its entirety as time-barred, **DECLINE** to order emergency injunctive relief, and **WARN** Thompson that this case may be considered his third "strike" under the Prison Litigation Reform Act.

**I.    Initial Screening Standard**

Because Thompson is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court is required to screen his Complaint. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2). The Court

must dismiss the complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2).

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable *legal* basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable *factual* basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe a complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]). Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

**II.     Parties and Claims**

Plaintiff Thompson is currently in the custody of the State of Michigan, serving a sentence for first-degree home invasion. (Complaint,[1] PageID 12, 27, 36). *See People v. Thompson*, unpublished per curiam opinion of the Michigan Court of Appeals issued June 4, 2013 (Docket No. 304160), 2013 WL 2420957, at *1 ("Defendant appeals his jury trial conviction of first-degree home invasion, MCL 750.110a(2). The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 18 to 36 years in prison."), *leave to appeal denied*, 495 Mich. 901, 839 N.W.2d 480 (Nov. 25, 2013).

Prior to his latest Michigan case, Thompson spent a period of time in custody in Ohio. In 2003, Thompson pled guilty to aggravated burglary and attempted kidnapping in the Common

---

[1] At the time of this writing, the Complaint and its attachments appear on the docket as Doc. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6, and 1-7. This Report and Recommendation will cite the documents together simply as the "Complaint."

Pleas Court of Franklin County, Ohio.[2] (*See* Judgment Entry, Doc. 1-3, PageID 28). Other charges for attempted rape and robbery were dismissed as part of the plea agreement. (*Id.* (entering a "nolle prosequi" as to those counts); Complaint, PageID 16, 19). In a Judgment Entry issued on December 22, 2003, the Franklin County Court sentenced Thompson to serve five years in prison on each conviction, concurrently, for a total sentence of five years in prison. (*Id*; Complaint, PageID 16, 28). Most of the Complaint concerns these convictions and sentences, including how they allegedly influenced later events and the criminal proceedings in Michigan.

Thompson first alleges that he should have been released from his Ohio sentences on January 25, 2008, when his five-year sentence expired. (Complaint, PageID 16, 18 (including a calculation of 324 days of jail time credit); Judgment Entry, Doc. 1-3, PageID 29 (finding Thompson entitled to 324 days of jail time credit)). Instead, according to Thompson, his release date was "extended" in 2007 so that he could participate in "a mandatory sex offender program, as a requirement of his [post-release control], and a condition of his release from prison." (*Id.*). Thompson asserts that neither the plea agreement nor the Judgment Entry sentencing him required him to attend a sex offender program, or to register as a sex offender. (*Id.*). He alleges that these requirements, imposed by the Ohio defendants identified below, and the designation as a sex offender based on a dismissed charge, went beyond what the Franklin County Court ordered, burdened his liberty interest, and violated his due process rights under the Fourteenth

---

[2] Thompson appears to assert in the Complaint that he pled nolo contendere, or no contest, to these offenses rather than pleading guilty to them. (Complaint, PageID 16, 19). The provided Judgment Entry and the online docket of the Franklin County Case reflect that he entered a guilty plea. (*See* Doc. 1-3, PageID 28-29). *See also State v. Arthur V. Thompson,* Franklin C.C.P. No. 03 CR 000549, available by name or case number search at https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/ (last visited April 22, 2024).

Amendment.[3] (*Id.*)

Thompson further alleges that some of the defendants violated his Eighth Amendment rights, as they were aware that inmates attending sex offender programs suffer abuse, violence, and inhumane treatment from other inmates. (Complaint, PageID 20, 24). He alleges that these defendants failed to protect him from such "potential harm" before his 2010 release. (*Id.*). He does not detail any way in which he was physically injured by other inmates, but he does allege that he feared such injury on a daily basis and was called names and taunted by other inmates, which negatively affected his mental health. (*Id.*, PageID 20, 22, 24-25).

Thompson was released from prison in Ohio into supervision on or around October 8, 2010. (Complaint, PageID 27; *see also* "Conditions of Supervision" form, Doc. 1-4, PageID 33-35). After his release, Thompson learned that he was listed on a public sex offender registry in Ohio. (Complaint, PageID 25). Despite not having been convicted of a sexual offense, Thompson did register with the "Ohio Sex Offender Registry" through the Columbus Police Department in 2010. (*Id.*) Thompson asserts that he raised this error—that he was not required to register—with a detective at a later time, who he says confirmed with the Franklin County Clerk of Court that Thompson was not required to register and excused Thompson with an apology. (*Id.*).

In addition, Thompson alleges that his Ohio parole officer, Kenneth Daniels, "mishandled" his release. (Complaint, PageID 23). He alleges that, on November 10, 2010, about a month after his release from prison in Ohio, Daniels "publicly, released knowingly false

---

[3] The United States Court of Appeals for the Sixth Circuit appears to have recognized such a claim. *See generally Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518, at *2-3 (6th Cir. Apr. 28, 2020), and later proceedings as described in *Harper v. Arkesteyn*, No. 19-cv-11106, 2022 WL 2338578, at *14 (E.D. Mich. June 28, 2022), *report and recommendation adopted*, 2022 WL 3446198 (E.D. Mich. Aug. 17, 2022) (discussing an alleged due process violation for being wrongly designated a sex offender).

5

information to the (Dearborn, [Michigan] Police Department)" while that department was considering whether to charge Thompson with first-degree home invasion. (Complaint, PageID 27). Thompson appears to argue that Daniels' erroneous statement to a Michigan officer that Thompson was a registered sex offender caused Michigan to charge him with first-degree home invasion rather than the (presumably less serious) offense of "entering without permission." (*Id*.). Thompson later pled guilty to first-degree home invasion; that is the sentence he is currently serving. (*Id*., PageID 52); *People v. Thompson*, 2013 WL 2420957, at *1.

In support of his allegations in this case, Thompson attaches an apparent copy of a police report and presentence investigation report concerning his most recent Michigan case. (Doc. 1-5, PageID 39-49; Doc. 1-6, PageID 50-55). The police report reflects that Parole Officer Daniels confirmed that Thompson "was a registered sex offender and released from prison on 10-08-2010 after serving 7 years, 8 months for burglary and kidnapping." (Doc. 1-5, PageID 46). The presentence investigation report, dated May 19, 2011, similarly says that:

> Contact was made with the defendant's Parole Officer Kenneth Daniels out of Columbus, OH[.] According to the defendant's parole officer, he was released from prison on 10/10/10 after serving a 7 year prison term on the charge of Attempted Kidnapping. Parole Officer Daniels states the defendant's overall adjustment to parole can only be described as poor, due to the fact he had only been out of prison 30 days when he was arrested for the within offense. Parole Officer Daniels reports that the Department of Corrections out of the State of Ohio will pick up the defendant once he is released from prison on the matter out of Michigan's jurisdiction. . . .

(Doc. 1-6, PageID 55). Thompson appears to raise a state law defamation claim against Daniels based on these statements. (Complaint, PageID 17, 23, 27; *see also* Show Cause Response, Doc. 3, PageID 86).

In sum, the Undersigned reads the Complaint as raising federal civil rights claims under 42 U.S.C. § 1983 for violations of the Eighth Amendment (variously described as deliberate indifference, cruel and unusual punishment, and conditions-of-confinement claims) and the

6

Fourteenth Amendment (due process). (*See also* Civil Cover Sheet, Doc. 1-8, PageID 58; Show Cause Response, Doc. 3, PageID 86). Additionally, Thompson indicates on the Civil Cover Sheet that he is raising a Sixth Amendment claim, but the nature of this claim is not explained in the Complaint or readily apparent on these facts. Finally, Thompson raises a claim under Ohio law for defamation.

He raises these claims against some or all of the following eight defendants:

1. Mike DeWine, the Governor of Ohio;
2. James Haviland, the Warden of Allen Correctional Institution;
3. Larry Bodell, described as an Ohio prison employee at Belmont Correctional Institution;
4. Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Correction (ODRC);
5. Kenneth Daniels, an Ohio Parole Officer;
6. John Reed, a detective with the Columbus, Ohio, Police Department;
7. M. [Maryellen] O'Shaughnessy, Clerk of the Franklin County Court;
8. John Doe, a prison counselor at Allen Correctional Institution.

(Complaint, PageID 12, 15). Thompson later moved to voluntarily dismiss Maryellen O'Shaughnessy, a motion the Court now **GRANTS**. (*See* Doc. 3, PageID 90).

Thompson seeks monetary damages from Defendants. He asserts that if he had been released at the proper time, he would have had the chance to donate a kidney to his father and save his life. (Complaint, PageID 26). Thompson seeks $20 million in damages (including punitive damages) "for the mental anguish of . . . losing his father." (*Id.*, PageID 17, 26-27; Civil Cover Sheet, Doc. 1-8, PageID 58; Show Cause Response, Doc. 3, PageID 90).

Further, because Thompson will have to return to the State of Ohio's custody after serving his Michigan sentence (presumably to answer for the violation of his Ohio post-release control), Thompson asks the Court to "dismiss the current custody hold against him" by the ODRC. (*Id.*, PageID 17, 27, 55).

## III. Discussion

### A. **Statute of Limitations**

The issues Thompson raises in the Complaint all occurred more than a decade before the Complaint was filed in November 2023. As the Undersigned previously warned him:

> It appears that the Complaint is subject to dismissal in its entirety as time-barred. Plaintiff alleges, among other things, that various state actors violated his rights in during his 2003-2010 incarceration in Ohio prisons. He asserts that he should have been released on January 25, 2008, when his five-year sentences were served, but that he was not actually released until October 8, 2010. (Doc. 1-2, PageID 18, ¶¶ 3-4). Plaintiff also alleges wrongdoing by one defendant shortly after his release, on November 10, 2010. (Doc. 1-2, PageID 27, ¶¶ 39-41). His Complaint was signed and submitted more than thirteen years later, on November 16, 2023. (Doc. 1-2, PageID 27).
>
> In Ohio, the statute of limitations for a claim brought under 42 U.S.C. § 1983 is two years. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (citing *Owens v. Okure*, 488 U.S. 235 (1989)) ("the appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code Ann. § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual."). Here, all of events described above occurred more than two years before Plaintiff submitted his Complaint. The last action mentioned in the Complaint allegedly occurred on December 29, 2020, when Plaintiff said he received a copy of the judgment entry sentencing him. (Doc. 1-2, PageID 19, ¶ [7]). Even assuming this date could be used as the date that particular claim accrued,[4] the November 16, 2023 Complaint was still submitted more than two years later.
>
> A complaint that brings time-barred claims is subject to dismissal. *See* 28 U.S.C. §1915A; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (concluding that "the district court properly dismissed as frivolous Plaintiff's

---

[4] "Plaintiff appears to sue 'M. O'Shaughnessy (Clerk)' based on his allegation that he received a copy of his 2003 judgment entry from her on December 29, 2020. (Doc. 1-2, PageID 19, ¶ 7)." (Show Cause Order, Doc. 2, PageID 83, n.1).

> claims arising out of his incarceration at [a particular correctional facility] inasmuch as any such claim is barred the by the applicable statute of limitations.").

(Show Cause Order, Doc. 2, PageID 83-84).

In his response to the Show Cause Order, Thompson attempts to explain the lapse of time in a few ways. (Doc. 3). He first asserts that there is no federal statute of limitations for claims raised under 42 U.S.C. § 1983. (*Id.*, PageID 86). This is a correct but incomplete statement. It does not mean that no statute of limitations applies to § 1983 claims, and that § 1983 claims may therefore be brought at any time. Rather, it means that federal courts borrow the relevant state's statute of limitation for personal injuries. *See Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). In Ohio, it is well-settled "that a two-year statute of limitations applies to § 1983 claims." *Id*.

Thompson also appears to argue that he was under a "legal disability" while in prison which paused any time limit. (Doc. 3, PageID 86). Although not clear, this may be a reference to "a Michigan statute that suspends limitations periods for persons under a legal disability until one year after the disability has been removed." *See Hardin v. Straub*, 490 U.S. 536, 537 (1989). There is no reason articulated why a Michigan statute should apply to these claims, and the Undersigned is not aware of any analogous Ohio statute that would similarly suspend the statute of limitations for prisoners.

Thompson next argues that his claims did not accrue until many years after the events on which they are based. (Doc. 3, PageID 87, 89). He says that he did not "officially" become aware that "he was suffering any (wrongs)" until December 29, 2020, when he received a copy of the Franklin County Judgment Entry from the clerk of that court. (*Id.*, PageID 87; *see also* Complaint, PageID 19). Presumably, the Judgment Entry confirmed for him that the court had not designated him as a sex offender. (*See* Judgment Entry, Doc. 1-3, PageID 28-29). He does

9

not address why he waited many years after his conviction in 2003 and release in 2010 to request this information from the clerk. (*See* Letter from Clerk O'Shaughnessy responding to Thompson's request, Doc. 1-6, PageID 56).

From December 2020, Thompson asserts that access to this Court was "physically impossible" until November 16, 2023 (when he signed the Complaint), due to the Covid-19 pandemic. (Doc. 3, PageID 87). He alleges that he personally contracted the virus in November 2020. (*Id.*). Thompson says he began preparing his case in March or April of 2022, when alerted to a Michigan case concerning Michigan's Sex Offender Registration Act ("SORA"), the relevance of which is not immediately clear. (*Id.*) *See Lally v. Whitmer*, No. 23-10044, 2023 WL 8115527, at *1 (E.D. Mich. Nov. 22, 2023) (citing *Doe v. Snyder*, 449 F. Supp. 3d 719 (E.D. Mich. 2020) ("*Does II*") ("*Does II* held that (1) retroactive application of any SORA provision violated the Ex Post Facto Clause; (2) the school-zone provisions and some reporting requirements were unconstitutionally vague; and (3) some of the reporting requirements violated the First Amendment. *Id.*"). Thompson ultimately asserts that the claims accrued in October 2022, when he "was ready to present [his claims to] the Court . . ." (*Id.*, PageID 87; *see also* PageID 89 ("the 'crucial time' for accrual purposes within this case, is the time plaintiff, after receiving the Franklin County Clerk's (December 29, 2020) letter, did he begin to realize, he suffered Defendants'(s) wrongs, and didn't have the evidence until (Oct. 2022).")). He further explains that his progress on the Complaint was interrupted by an institutional transfer in December 2022. (*Id.*, PageID 89).

Finally, in what may be an alternative argument, Thompson cites a fear of retaliation by the Ohio Defendants. (Doc. 3, PageID 88-90). This may be an argument that he did not timely

file his Complaint while in Defendants' custody (i.e., before his release in October 2010) because he feared they would retaliate against him if he did. (*Id.*).

Thompson's explanations do not convince the Undersigned that his claims accrued a decade or more after the events on which they are based. Generally, as a matter of law, a § 1983 claim "accrue[s] when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Harris v. German Twp.*, No. 3:19-cv-341, 2022 WL 866815, at *5 (S.D. Ohio Mar. 23, 2022) (citing *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007)). Contrary to Thompson's assertion that he did not "officially" know he was suffering any wrongs, the Complaint explicitly says that he knew about most of the alleged wrongs and injuries when they occurred.

With respect to his claims about being labelled a sex offender and having to attend a sex offender program (which delayed his release), Thompson says in his Complaint that he knew about and raised this issue at the time it occurred:

> The matter discussed in this complaint was first, brought to the attention of prison counselor at the (Allen Corr. Inst.). Where i had an issue with, being transferred to another facility to, take a sex offender program. I pleaded to him that, It was not explained to me, prior to pleading. . . .
>
> In the next weeks? or, months? after that. I was eventually, transferred. Despite, having provided proof, that my (PRC) general conditions did not require, being mandated by the court, to take such programming.

(Complaint, PageID 14 (as in original)). The transfer occurred in or around 2007, and Thompson knew or had reason to know about his claim at that time. (Complaint, PageID 18, ¶ 6).

With respect to his claim that he was wrongly required to register a sex offender in Ohio, the Complaint also explicitly says he knew about it while in prison. (Complaint, PageID 18, ¶ 2-3 ("This additional (PRC) 'Special Condition', was not brought to Mr. Thompson's immediate attention until, nearing the completion of his (5) year prison term . . .")). He signed the "Sex

11

Offender Special Conditions" form agreeing that he would register with the Sheriff's Department on October 12, 2010.  (Doc. 1-4, PageID 35).

Thompson actually did register in 2010.  He explained in the Complaint that "when he was, released from the Belmont Corr. Inst., (B.C.I), he went and stayed with" a friend in Columbus.  (Complaint, PageID 25).  The friend "let Mr. Thompson know, that he'd been listed in an (Ohio-public registry), posting him as a 'registered sex offender'. This infuriated Mr. Thompson because, he'd not-ever, been convicted of any sex crimes in his life." (*Id*.).  "Mr. Thompson nevertheless, did register with the (Ohio Sex Offender Registry), at the Columbus Police Dept. in (2010)." (*Id.* (as in original)).  Thompson therefore knew or had reason to know about this claim in 2010, at the latest.

With respect to his claim that certain Defendants failed to protect him from potential harm from other inmates while attending the sex offender program at BCI from 2007 to 2010 (Complaint, PageID 20), Thompson says that he experienced the fear and "daily psychological aggression" and "personally, thought about [it] every single day he was there."  (*Id.*, PageID 24).  The last day he was there was in October 2010.  (*Id.*, PageID 18, 27).

Thompson knew or had reason to know about these events and issues—which "should have alerted the typical lay person to protect his or her rights"—in 2007 through 2010.  *See Beaver St. Invs., LLC v. Summit Cnty., Ohio*, 65 F.4th 822, 826 (6th Cir. 2023) (quoting *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).  *See also McGhee-Twilley v. Corecivic of Tennessee, LLC*, No. 3:23-cv-77, 2024 WL 1313884, at *6 (M.D. Tenn. Mar. 27, 2024) ("it is the plaintiff's knowledge that an injury occurred and not the discovery of other facts that begins the statute-of-limitations clock").  His claims accrued at that time.  He had two years

12

in which to raise those claims under 42 U.S.C. § 1983.[5] His November 2023 Complaint was submitted more than a decade later, and the § 1983 claims in it are therefore time-barred.[6]

Thompson's state law defamation claim[7] is analyzed somewhat differently. With respect to his claim that his parole officer erroneously told a Michigan law enforcement officer that Thompson was a registered sex offender in November 2010 (Complaint, PageID 27), the Complaint does not address when Thompson learned about that statement. But that is not the important date for an Ohio defamation claim. Instead, "the statute of limitations begins to run when the allegedly defamatory words are first spoken or published regardless of the aggrieved party's knowledge of them." *Doe v. Coll. of Wooster*, No. 5:16-cv-979, 2018 WL 838630, at *4 (N.D. Ohio Feb. 13, 2018) (citations omitted and cleaned up). The statute of limitations for such a claim under Ohio law is one year. *Id*. (citing Ohio Revised Code § 2305.11(A)) ("An action for libel [or] slander . . . shall be commenced within one year after the cause of action accrued")). Thus, any state law claim based on Daniels' November 10, 2010 statement about Thompson

---

[5] This is not a determination that Thompson should have raised all of his claims under § 1983.

[6] This conclusion is not undermined by Thompson's suggestion that he delayed filing because he feared retaliation from Ohio prison officials. (*See* Doc. 3, PageID 88-90). Even if a generalized fear could potentially excuse his failure to file while in prison in Ohio—that is, until October 2010—it would offer no reason to excuse or ignore his failure to file in the following thirteen years during which he was *not* within the control of Ohio prison officials. *See generally Wershe v. City of Detroit*, Nos. 21-11686 & 22-12596, 2023 WL 6096558, at *5-9 (E.D. Mich. Sept. 18, 2023), *on appeal sub nom. Wershe v. United States*, No. 23-1903 (concluding that a prisoner waited too long to raise his § 1983 claims and that his generalized, subjective claim that he feared retaliation from prison officials was insufficient to allow his claims to proceed after a lengthy delay).

[7] In Ohio:

> "Defamation is a false publication that injures a person's reputation." *Fisher v. Ahmed*, 153 N.E.3d 612, 624 (Ohio Ct. App. 2020) (citation and quotation omitted). There are two types of defamation, slander and libel; the former is spoken, the latter is written. *See id.* The prima facie requirements for both are: (1) a false statement of fact, (2) that was defamatory, (3) that was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite intent in publishing the statement. *See id.* (citing *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 978 N.E.2d 832, 852 (2012)).

*Green v. Mason*, 504 F. Supp. 3d 813, 829 (S.D. Ohio 2020).

accrued on that date. (Complaint, PageID 27, ¶ 41). Like the § 1983 claims, it is now time-barred.

Claims that are time-barred by more than a decade should be dismissed as frivolous. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (concluding that "the district court properly dismissed as frivolous Plaintiff's claims arising out of his incarceration at [a particular correctional facility] inasmuch as any such claim is barred the by the applicable statute of limitations."). Accordingly, the Undersigned **RECOMMENDS** that the Court **DISMISS** the claims in the Complaint because they are time-barred.[8]

---

[8] There appear to be several other overlapping reasons why some or all of these claims cannot succeed, including that:

1. Claims concerning the length of a sentence must be raised in a habeas corpus case, or show that the judgment has already been invalidated. *See Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973) ("Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement."); *Arthur Thompson v. McNamara*, No. 2:21-cv-11045, 2021 WL 2187086, at *2 (E.D. Mich. May 28, 2021) (summarily dismissing Thompson's § 1983 claim concerning his Michigan conviction as barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)).

2. Thompson's Eighth Amendment claim concerning "potential harm" by other inmates would not succeed where no actual, physical harm occurred. *See Mitchell v. Washington*, No. 2:19-cv-10633, 2019 WL 2005916, at *3 (E.D. Mich. May 7, 2019) (and the cases cited therein) ("The major problem with plaintiffs [failure to protect] claim is that he was not actually physically assaulted at the [prison] as a result of the defendants' alleged acts. To state a failure-to-protect claim, a plaintiff must allege physical injury.").

3. No damages can be awarded against state defendants sued in their official capacity, as those claims are the same as claims against the state and are barred by the Eleventh Amendment. *See Thompson v. McNamara*, 2021 WL 2187086, at *2; *Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518, at *2 (6th Cir. Apr. 28, 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("Harper's § 1983 claims for money damages against the defendants in their official capacities fail as a matter of law. The Eleventh Amendment protects a state official from suit for monetary damages in his or her official capacity because 'a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. . . . As such, it is no different from a suit against the State itself.'").

4. Thompson has not alleged any *facts* demonstrating the personal involvement of the Ohio Governor, the ODRC Director, or the ACI Warden. *See Lathan v. United States*, No. 3:18-cv-2115, 2019 WL 857962, at *4 (N.D. Ohio Feb. 22, 2019) ("Plaintiff can bring claims against the [state] officers in their individual capacities without running afoul of the Eleventh Amendment; however, he must allege sufficient facts to demonstrate that each individual was personally involved in the activities which form the basis of the alleged unconstitutional behavior.").

5. There are no identifiable facts pled against Columbus Detective Reed.

14

B. **Emergency Injunctive Relief**

In his response to the Show Cause Order, Thompson asks this Court for emergency injunctive relief to prevent his transfer back into ODRC custody. (Doc. 3, PageID 88; *see also* PageID 90 (asking that "the court issue an injunction order, prohibiting Ohio prison officials from enforcing their current (Detainer) against plaintiff…")). He alleges that he fears retaliation from Defendants if he is returned. (*Id.*, PageID 88-90). Although as of this writing Thompson has not filed a separate motion for injunctive relief (and any motion would be moot if the case is dismissed), this Section is included in the interest of completeness.

A temporary restraining order, or TRO, is an "extraordinary and drastic remedy" that should "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017) (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) and *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Its purpose is "to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996).

Rule 65 of the Federal Rules of Civil Procedure governs the requirements and procedures for both preliminary injunctions and TROs, and the same substantive standards generally apply to both. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *Northeast Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). Under Rule 65, a temporary restraining order may be issued without notice to the adverse parties under certain circumstances. Rule 65(b)(1) provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

15

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).  In contrast, "[t]he court may issue a preliminary injunction only on notice to the adverse party."  Fed. R. Civ. P. 65(b)(1) (emphasis added).

In determining whether to grant or deny emergency injunctive relief, the Court must consider four factors:  (1) whether the movant has shown a strong or substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without an injunction; (3) whether issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of an injunction.  *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014); *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)).  "These factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together."  *Northeast Ohio Coal. for Homeless*, 467 F.3d at 1010 (quoting *Mich. Coal of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

The Court should decline to issue a TRO or preliminary injunction at this time.  As the Rule cited above indicates, a preliminary injunction would require a number of steps before proper consideration, including a response from defendants who have not yet been served and may not even be aware of this lawsuit.  As for the apparent request for an ex parte TRO, Thompson has not shown that a TRO is necessary or warranted, even if this case were to proceed.

First, it does not appear that Thompson is scheduled to be transferred back into ORDC custody in the near term. MDOC records reflect that he will continue to serve his Michigan sentence until at least 2029. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=219215 (last visited April 22, 2024) (indicating that Thompson's "Earliest Release Date" is May 5, 2029). His eventual return to Ohio in a few years to face the consequences of a post-release control violation does not present an emergency that requires this Court's immediate action.

Second, the Undersigned questions whether shielding Thompson from his future post-release control violation would be an appropriate remedy for Defendants' alleged past errors—particularly where the evidence he presents appears to confirm that he violated his post-release control. (*See, e.g.,* "Conditions of Supervision" form, Doc. 1-3, PageID 30 (wherein Thompson agreed that he would "obey federal, state and local laws," and would "not leave the State of Ohio without written permission of the Adult Parole Authority")). It is also unclear whether a challenge to such future custody is properly made in a § 1983 case.

For these reasons, and because Thompson has not shown a strong likelihood of success on the merits, *see* footnote 8 above, the Undersigned **RECOMMENDS** that the Court **DECLINE** to issue emergency injunctive relief in this case.

C. **Strike Warning**

A prisoner's ability to proceed *in forma pauperis* is limited by the so-called "three-strikes" provision of the Prison Litigation Reform Act, or PLRA. This provision bars a prisoner from proceeding *in forma pauperis* where the prisoner has,

> on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

17

28 U.S.C. § 1915(g). "The 'three strikes' provision was 'designed to filter out the bad claims and facilitate consideration of the good.'" *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)). It was included in the *in forma pauperis* statute because "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).

This Court previously noted that Thompson appears to have already accrued two strikes. (*See* Second Deficiency Order, Doc. 4). They are:

1. *Thompson v. McNamara*, No. 2:21-cv-11045, 2021 WL 2187086 (E.D. Mich. May 28, 2021);

2. *Thompson v. Brown*, No. 2:21-cv-106, 2021 WL 2548772 (W.D. Mich. June 22, 2021), *appeal dismissed as untimely*, No. 21-2943 (6th Cir. Dec. 13, 2021).

(*Id*.). There may be other "strikes" of which the Undersigned is not immediately aware.[9]

While this Court cannot bind later courts that may consider whether Thompson has already accumulated three strikes, it can recommend that this case be treated as a strike. *See Simons v. Washington*, 996 F.3d 350, 353 (6th Cir. 2021) ("Even if the ruling court may not be able to bind later courts to a strike characterization, it often will make sense for the court that dismisses a prisoner's suit to make a non-binding strike recommendation—sometimes what amounts to a strike warning."). A warning should be given here to advise Thompson that he may be denied the ability to proceed *in forma pauperis* in later cases if a district court is satisfied that he has accumulated three "strikes" and his complaint does not raise claims alleging that he is in imminent danger of serious physical harm.

---

[9] Thompson's habeas corpus case(s) and appeal do not count as strikes. *See Thompson v. Brown,* No. 2:21-cv-12619, 2023 WL 6393868 (E.D. Mich. Sept. 29, 2023), *on appeal,* No. 23-1957 (6th Cir.).

The Undersigned **RECOMMENDS** that the Court **WARN** Thompson that this case may be treated as a third "strike" under the PLRA. 28 U.S.C. § 1915(g).

IV.     **Summary and Conclusion**

Having screened the Complaint under 28 U.S.C. §§ 1915 and 1915A, the Undersigned **RECOMMENDS** that the Court:

1. **DISMISS** the Complaint in its entirety as time-barred,

2. **DECLINE** to issue emergency injunction relief,

3. **WARN** Thompson that this case may be considered a third "strike" under the PLRA,

4. **CERTIFY** that an appeal would not be taken in good faith, and **DENY** Thompson leave to appeal *in forma pauperis*. 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

The Undersigned also **GRANTS** Plaintiff's motion to voluntarily dismiss Defendant O'Shaughnessy. (Doc. 3, PageID 90). The Clerk of Court is **DIRECTED** to terminate her as a party on the docket.

Thompson may file objections to this recommendation, as noted in the next section. He is reminded that he must keep this Court informed of his current address while this case is pending.

V.     **Notice Regarding Objections to this Report and Recommendation**

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it **within fourteen days** after being served with a copy thereof. Fed. R. Civ. P. 72(b). All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. The Court may extend the 14-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made. Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

April 30, 2024   *s/Stephanie K. Bowman*
STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE